## ROBISCHUNG *v.* HANDIGES.

PATENTS; INTERFERENCE; DILIGENCE; REDUCTION TO PRACTICE.

1. Where the junior party in interference, although the first to conceive, was the last to reduce to practice, he must, in order to prevail over the senior party, show that he was exercising due diligence in reducing his invention to practice during the period just before and subsequent to the time when his rival entered the field.

2. Where the junior party in interference has placed the entire control of his invention in the hands of a third person, he must stand or fall, on the issue of diligence in reducing his invention to practice, on the conduct of such third person, in the prosecution of the invention.

3. Where the junior party to an interference conceived and disclosed his invention as early as February 15, 1907, but did not reduce it to practice, although it was a simple one and could easily have been embodied in an operative device, and did not file application for a patent until April 23, 1908, he was *held* not to be entitled to priority over the senior party, who conceived the invention about January 15, 1908, and filed his application February 20, 1908, no excuse for the junior party's delay being offered except that his applications, which were executed July 5, 1907, had been mislaid; and it appearing that no ef-

fort was made to locate them until about the middle of January, 1908.  (Citing *Ritter* v. *Krakau,* 24 App. D. C. 271.)

No. 642.  Patent Appeals.  Submitted November 8, 1910.  Decided December 5, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. F. R. Cornwall* for appellant.

*Mr. Harvey S. Knight* for appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding, awarding judgment of priority to appellee, Philip T. Handiges, the senior party. The decision appealed from affirmed the decisions of the other two tribunals of the Patent Office.

The invention in issue relates to improvements in brake heads, and is sufficiently illustrated by the following counts:

"An adjustable brake comprising a brake applying member, and having a cylindrical end, and a brake head constructed with a cylindrical bearing adapted to fit upon said cylindrical end with freedom of angular adjustment relatively thereto; and means changing the transverse dimension of one of said parts whereby the bearing is caused to bind on the cylindrical end, and maintain the angular position to which the head is adjusted.

"In an adjustable brake, the combination of the brake applying member having a supporting end constructed to receive a brake head, and a brake head constructed with a bearing fitted to said end and carrying an interlocking key; the supporting end being constructed with circumferentially extending

key ways on opposite sides thereof, to permit the brake applying member to be reversed in position relatively to the head."

It appears from the record that appellant, Henry B. Robischung, conceived and disclosed the invention in issue as early as February 15, 1907. Appellee conceived and disclosed the invention about January 15, 1908, and filed an application for letters patent February 20, 1908. Appellant made application on April 23, 1908. Neither party made an actual reduction to practice, but both rely upon their respective filing dates.

Appellant, although the first to conceive, was the last to reduce to practice. Therefore, in order to prevail over appellee, it must appear that he was exercising due diligence in reducing his invention to practice during the period just before and subsequent to the time appellee entered the field.

It appears from the record that appellant placed the entire control of the invention here in issue, as well as of other devices and improvements which he had made, in the hands of one E. B. Leigh, president and general manager of the Chicago Railway Equipment Company, for the use of that company. It is evident therefore, and was conceded at bar, that appellant must stand or fall upon Leigh's conduct in the prosecution of the invention.

It further appears that Leigh had applications prepared for these inventions, which applications were executed by appellant on July 5, 1907, and returned to Leigh. In the latter part of December, 1907, the equipment company moved its offices into a new building not yet completed, and through inadvertence the bundle containing the applications was mislaid and so confused with the other records of the company that it was not found until about the middle of April, 1908. The evidence discloses that some little effort was made by Leigh's assistant to locate the papers. This we regard as of little importance, since, in this case, the excuse of having merely mislaid the papers could not under any circumstances be held sufficient.

While appellant was not required to exercise diligence until just before appellee entered the field, yet it is proper to note, for the purpose of arriving at his intention, or rather the inten-

tion of his agent, Leigh, to abandon the invention, that from the date the applications were executed until the middle of January, 1908, no action whatever was taken. It was then that Leigh first took steps to locate the missing papers.

It is admitted that the applications could have been reproduced from the carbon copies in the hands of the attorneys. We are asked to excuse Leigh's failure to do this on the ground that certain memoranda showing desired changes in one of the applications—not the one, however, here in interference, but which involved the same subject-matter—were also lost. However, it does not appear that this data could not have been reproduced by the exercise of reasonable effort. Neither is any excuse offered for the failure to reduce the invention to practice. The invention is a simple one, and could easily have been embodied in an operative device. No plea of poverty was interposed, and none could be.

"Weeks and months, perhaps even years, may not count for much in the race of diligence between rival inventors, when the time is to be applied to the reduction to practice of a costly or intricate invention whose operativeness it is required to prove by laborious experiment. But where, as in this case, all that either party has done is to conceive the invention, and to apply to the Patent Office for letters patent, such delay [two months and a half] as was indulged in by the appellant was sufficient to warrant the granting of the patent to his more diligent opponent." *Ritter* v. *Krakau,* 24 App. D. C. 271.

We agree with the conclusions reached by the tribunals of the Patent Office that appellant was not using due diligence in reducing his invention to practice, and that, therefore, appellee is entitled to an award of priority. The decision of the Commissioner is affirmed, and the clerk is directed to certify these proceedings as by law required.            *Affirmed.*